***NOT FOR PUBLICATION***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHELLE MAMMARO<br><br>            Plaintiff<br><br>            v.<br><br>OMEGA LABORATORY, INC.,<br>PATRICK MINNO, in his individual capacity,<br>*et al.*,<br><br>            Defendants. | Civil Action No.:13-6483(FLW)<br><br>**OPINION** |

**WOLFSON**, **United States District Judge**

This civil rights action, brought by plaintiff Michelle Mammaro ("Plaintiff"), arose out of the removal of Plaintiff's daughter from her home by New Jersey Division of Child Protection and Permanency (formerly Division of Youth and Family Services, hereinafter referred to as "DYFS"). Presently before the Court is a motion to dismiss filed by defendants Omega Laboratory Inc. and Patrick Minno,[1] which, according to Plaintiff, was an agent of DYFS.  In her Complaint, Plaintiff alleges, *inter alia*, that Omega conspired with DYFS to deprive Plaintiff of her constitutional rights by falsifying evidence – drug tests – used in her daughter's removal proceeding, and to retaliate against Plaintiff for asserting those rights.[2] Specifically, Plaintiff asserts that Omega: 1) violated her due process and equal protection under the law pursuant to § 1983; 2) violated her First, Fourth,

---

[1]      For the purposes of this motion, because Mr. Minno is alleged as an employee or agent of Omega Laboratory, the Court will refer to Mr. Minno and Omega Laboratory collectively as "Omega" or "Defendant."

[2]      Plaintiff also names DYFS, Watchung Police Department and various other individual as defendants.  Those defendants did not move for dismissal at this time.

Sixth, Eighth, and Fourteenth Amendment rights under § 1983 and § 1986; 3) retaliated against her for engaging in protected activity; and 4) conspired to violate her civil rights under § 1985. Plaintiff also asserts claims under state law for violating her constitutional rights under the New Jersey Civil Rights Act.  For reasons set forth below, the Court **GRANTS** Omega's motion to dismiss all counts of the Complaint.

## BACKGROUND

For the purpose of this motion, the Court will take the allegations in the Complaint as true, and only recount pertinent facts. Plaintiff was investigated by DYFS for abuse and neglect of her child based on information from her husband and her husband's brother. *See* Compl. ¶¶ 23 – 56, 88. During the investigation, according to Plaintiff, she informed DYFS that those complaints from her husband were false and that she "was the victim of domestic violence at the hands of her husband on July 22, 2011." *Id*.  As a result of the investigation, Plaintiff claims that DYFS mistreated her and wrongfully accused her of abusing illegal substances, which resulted in DYFS removing Plaintiff's child from her home. Compl. ¶¶ 57-67, 71-74.

Because of the alleged drug abuse, Plaintiff was "ordered [by DYFS] to submit to a hair follicle drug test administered by Omega" on November 21, 2011. Compl. ¶¶ 75-76. Omega "allegedly used a limit of detection methodology instead of a standard test, falsely stating that it was positive for cocaine and marijuana." Compl. ¶ 76. Plaintiff alleges that according to Omega's own standard, a positive result for the use of cocaine must be "greater than its above listed cutoff" of 100 picograms/milligram. Compl. ¶ 79. Plaintiff further avers that because her test result was precisely 100 picograms/milligram, "it should have been listed as negative." Compl. ¶ 80. Rather, Omega deemed the 100 picograms/ milligram as a positive result.  Similarly, Plaintiff alleges that "the level of marijuana metabolite which had allegedly tested positive at .22 picograms/milligram,

2

would have been considered a negative test under the standard testing cutoff of .30 picograms/milligram." Comp. ¶ 84. Plaintiff concludes that "the hair follicle test, therefore was falsified evidence used to further the Defendant's violations of Plaintiff's civil rights, and was submitted in retaliation for her complaints about their violations of those rights." Compl. ¶ 86.

DYFS's complaints of child abuse and neglect against Plaintiff were dismissed on June 27, 2012, by the Superior Court of New Jersey; the court found that "she had never abused or neglected her child." Compl. ¶ 90.

### STANDARD OF REVIEW

Under Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citing *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002)). However, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleading must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action...." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotations omitted). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, as accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**DISCUSSION**

**I.      § 1983**

In her seven-count Complaint, Plaintiff asserts Counts Two to Seven against Omega and its agent. These Counts are asserted pursuant to §§ 1983, 1985 and 1986. In addition, Plaintiff asserts state law claims under the New Jersey Civil Rights Act ("NJCRA"). The state and federal claims will be analyzed together under the §1983 legal framework.[3]

To properly assert a § 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under the color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (alteration in original) (internal quotation marks omitted). The threshold question is whether Omega was a state actor. Because there is no dispute that Omega is a private entity, the court must look to whether Omega was acting under the color of state law.

In order to establish a § 1983 claim against Omega, Plaintiff must allege sufficiently that Omega classifies as a state actor. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Cahill ex rel. L.C. v. Live Nation*, 512 Fed. Appx. 227, 230 (3d Cir. 2013). Plaintiff argues that Defendant is a state actor under the "Joint Action Test" because "Defendants conspired with DYFS to submit false evidence of drug use to support DYFS's state actions against the Plaintiff to deprive

---

[3] The NJCRA was modeled after § 1983, and thus courts in New Jersey have generally looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *see also Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."); *see generally Hedges v. Musco*, 204 F.3d 109, 121 n.12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

her of her Fundamental Parents Rights. . . ." Pl. Br. in Opposition, at p. 6-8. While there are different state actor tests, since Plaintiff advances the joint action test, this Court will determine whether Omega is acting under the color of law according to that test.

A private party may be considered a state actor for the purposes of a § 1983 claim, so long as the named defendant "is a willful participant in joint activity with the State or its agents." *U.S. v. Price*, 383 U.S. 787, 794 (1966) ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute."). A two prong test has been devised by the Third Circuit under the Joint Action Test. *Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984); *Cahill*, 512 Fed. Appx. at 230-231. First, to be classified as a state actor through joint action, there must be evidence of a pre-arranged plan between the state actor and the private party. *Cruz*, 727 F.2d at 80; *Cahill*, 512 Fed. Appx. at 230-231. Second, the private party must have substituted its judgment for that of the state official's. *Cruz*, 727 F.2d at 80; *Cahill*, 512 Fed. Appx. at 230-231. Only if these two prongs are satisfied, can the party be "said to have engaged in the 'concert[ed]' or 'joint action' with the [state actors] necessary to bring them within the scope of a § 1983 claim." *Cruz*, 727 F.2d at 80; *Cahill*, 512 Fed. Appx. at 230-231. This inquiry, into whether a private entity is a state actor, must be fact-specific. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *see Cahill*, 512 Fed. Appx. at 230 (3d Cir. 2013). Furthermore, the inquiry also must focus on "the totality of the circumstances and cannot be limited to a single factual question." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 610–11 (3d Cir. 2011).

For example, the Third Circuit's inquiry in *Cahill* focused on the relationship between Live Nation, an entertainment company, running a live event, and the police who were contracted to direct traffic for that event. *Cahill*, 512 Fed. Appx. at 228. The Third Circuit, in deciding whether Live Nation was a state actor, used the two-prong test. *Id.* at 230-231. Ultimately, the court found

that Live Nation was not a state actor; it reasoned that while the first prong was arguably satisfied by the police officers' contract, the second prong was not met because the police maintained their own judgment when deciding "whether someone should be stopped for, or charged with, violating a law or ordinance, and the amount and type of force which should be used." *Cahill*, 512 Fed. Appx. at 231. The absence of evidence demonstrating that "police blindly obeyed" a directive of Live Nation led the court to find that the second prong was not satisfied and Live Nation was not a state actor. *Id*.

Here, based on Plaintiff's allegations, the facts surrounding Omega's involvement with DYFS and its interactions with Plaintiff are limited to the drug tests Omega administered. Plaintiff complains that Omega deviated from its testing standard in order to substantiate DYFS's removal proceedings against Plaintiff. In that connection, under Omega's protocol, Plaintiff's drug testing should have been recorded as negative for both cocaine and marijuana. Compl. ¶¶ 80, 84. Essentially, Plaintiff alleges that Omega "acted in concert" under the color of state law, as "an agent of DYFS." Compl. ¶¶ 15-16.

In response, Omega has attempted to introduce evidence to establish that Omega was not in direct privity with DYFS. Omega submits a testing request form from Expomed Inc, not a party to this case, to demonstrate that Omega performed the drug test at the request of Expomed, rather than DYFS. Def. Br. in Support, at p. 2. In that regard, Omega maintains that it was a subcontractor who has no contractual relationship with DYFS. While these exhibits create doubt whether Omega has a contractual relationship with DYFS, nonetheless on this motion, this Court must take as true Plaintiff's allegations, and according to the Complaint, DYFS contracted with Omega to conduct drug tests on its behalf. However, even taking the allegations as true, Plaintiff

6

has failed to state any claims against Omega because Plaintiff has failed to allege that Omega, as a private actor, was acting under the color of state law.

As to the first prong of the joint action test, Plaintiff alleges that Omega has a contractual relationship with DYFS. Indeed, according to the Third Circuit, such a relationship is sufficient to meet the first prong of the test – an existence of a pre-arranged plan. *Cahill ex rel. L.C. v. Live Nation*, 512 Fed. Appx. 227, 231 (3d Cir. 2013). However, a contractual relationship is not dispositive of joint action; as the Supreme Court has found, "private contractors do not become actors of the government [simply] by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982); *Sershen v. Cholish*, 2008 U.S. Dist. LEXIS 15678, at * 14 (M.D. Pa. Feb. 29, 2008).

Rather, Plaintiff has not sufficiently pled the second prong. The main inquiry here is whether DYFS's reliance on Omega's drug testing results is a sufficient substitution of judgment to fairly attribute state action to Omega. In other words, Plaintiff must allege that DYFS substituted its judgment for that of Omega's. However, other than allegations that DYFS and Omega had a contractual relationship, Plaintiff has not alleged any more facts that would indicate that DYFS substituted its judgment. As alleged, DYFS used Omega's drug testing results as evidence in its removal proceedings against Plaintiff. This is not sufficient to establish joint action between DYFS and Omega. *See Cahill ex rel. L.C. v. Live Nation*, 512 Fed. Appx. 227, 231 (3d Cir. 2013). Indeed, as pled, Omega's participation was only through the performance of its contract. Plaintiff does not allege that Omega in any way suggested how DYFS should use Plaintiff's drug tests. Nor does Plaintiff allege that Omega had any influence over the judgment of DYFS. Therefore, as alleged, Omega's only connection to this action is its contractual relationship with DYFS. This is not sufficient to establish joint action between DYFS and Omega. *See Cahill*, 512 Fed. Appx. at 231.

Because Plaintiff has failed to allege that Omega was acting under the color of state law, all of her § 1983-related claims against Omega are dismissed.

## II.     §§ 1985 and 1986

Plaintiff, in Count III, alleges that defendants, including Omega, conspired, in violation of § 1985, when they "reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated notwithstanding the constitutional implications of such abuse and the likelihood such conduct would be repeated." Compl. ¶ 120-22. Plaintiff further avers that this abuse of process is evident through "Defendants' incidents of abuse of process and from the repeating of that conduct in an effort to delay Michelle Mammaro her rights of due process." Compl. ¶ 121. Taken together, Plaintiff accuses Omega of conspiring with other defendants to abuse process in violation of § 1985. *See* Compl. ¶¶ 119-122.

However, no abuse of process claim exists under §1985. *See* 42 USC § 1985; *see also Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 281-282 (3d Cir. 2006); *Natale v. Schwartz*, 1999 U.S. Dist. LEXIS 18933, at *30 (E.D. Pa. Dec. 10, 1999) (finding that abuse of process is a state law claim and that "[g]enerally, § 1985 creates a cause of action not for conspiracies to commit state law torts but for conspiracies to violate particular civil rights."). And, while a state action for abuse of process may give rise to a conspiracy to obstruct justice in violation of 42 USC § 1985, *see Natale*, 1999 U.S. Dist. LEXIS 18933 at *30 (finding "that the plaintiffs intended . . . to state a claim that the defendants conspired to commit the state law tort of abuse of process and that this abuse of process would have constituted an obstruction of the due course of justice in a state court, thus giving rise to liability under § 1985(2)'s prohibition on conspiracies to commit such obstruction."), this type of claim has not been pled by Plaintiff.  Compl. ¶ 119-122.

8

Nevertheless, even under § 1985(2), Plaintiff would still fail to state a claim. This provision provides:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

42 USC § 1985(2); *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) (finding the second provision of § 1985 was most pertinent when two police officer filed "false or misleading statements to investigators about their conduct . . . to hide their culpable conduct").

The Third Circuit requires § 1985(2) claims for conspiracy to "include allegations that the conspiracy was motivated by racial or class-based discriminatory animus." *Natale v. Schwartz*, 1999 U.S. Dist. LEXIS 18933 at *44 (E.D. Pa. Dec. 10, 1999); *Davis v. Township of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) ("Because plaintiff does not allege that the officers colluded with the requisite " 'racial, or . . . otherwise class-based, invidiously discriminatory animus,' . . . the district court correctly dismissed this claim.") (citation omitted); s*ee Kush v. Rutledge*, 460 U.S. 719, 725 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Plaintiff at no point in her Complaint indicates any protected class to which she belongs, and Plaintiff never alleges that she was denied equal protection because of her class membership. As this is a fundamental aspect of a § 1985(2) claim, Plaintiff has failed to properly state a claim. Thus, Plaintiff's claim for abuse of process in violation of § 1985 is dismissed.[4]

---

[4] To the extent Plaintiff asserts a § 1985 claim under the broader scope of subsection (3), that claim would also be dismissed, because § 1985(3) also requires Plaintiff to allege that there was some racial or class based discriminatory animus behind the conspirators' action. *See Rogin Bensalem Township*, 616 F.2d 680, 696 (3d. Cir. 1980).

Furthermore, because Plaintiff cannot state a claim under § 1985, she also cannot state a claim under § 1986.  Indeed, where a plaintiff fails to state a claim under § 1985, the plaintiff may not recover under the interrelated, dependent cause of action under § 1986, action for neglecting to prevent a known § 1985 conspiracy.  *See Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994)("[i]n order to maintain a cause of action under §1986, the plaintiffs must show the existence of a § 1985 conspiracy."); *Zahl v. N.J. Dep't of Law & Pub. Safety*, No. 06-3749, 2009 U.S. Dist. LEXIS 85526, at *23 (D.N.J. Sep. 18, 2009).  Accordingly, Plaintiff's §§ 1985 and 1986 claims are dismissed for failure to state a claim.

## CONCLUSION

For the above stated reasons, Defendants' Motion to Dismiss is **GRANTED.**

An appropriate Order shall follow.


Dated: September 30, 2014                              /s/ Freda L. Wolfson
                                                       Hon. Freda L. Wolfson
                                                       United States District Judge