**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHELLE MAMMARO | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 13-6483 (FLW)(DEA) |
| | : | |
| THE NEW JERSEY DIV. OF CHILD | : | **OPINION** |
| PERMANENCY & PROTECTION, et al., | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge**

This civil rights action, brought by plaintiff Michelle Mammaro ("Plaintiff"), arises out of the removal of Plaintiff's daughter from Plaintiff's home by New Jersey Division of Child Protection and Permanency (formerly Division of Youth and Family Services, hereinafter referred to as "DYFS"). Presently before the Court is a motion to dismiss filed by defendants (1) DYFS; (2) DYFS director Kara P. Wood ("Wood"), in her official capacity; (3) Division of Children and Families[1] ("DCF") director Allison Blake ("Blake"), in her official capacity; (4) DYFS supervisor Alireichen Graziani, in her individual capacity; (5) DYFS supervisor Benjamin Rehig ("Rehig"), in his individual capacity; (6) DYFS caseworker Susan Hacker ("Hacker"); DYFS caseworker Rebecca LaBarre ("LaBarre"), in her individual capacity; and (7) DYFS caseworker Krista DeBroux ("DeBroux"), in her individual capacity (the seven defendants collectively referred to as "DYFS Defendants"; Wood and Blake collectively referred to as "DYFS directors"; Graziani, Rehig, Hacker, LaBarre, and DeBroux collectively referred to as "DYFS employees"). In relevant part, Plaintiff asserts the following claims in her Complaint: (1) in Count One, injunctive relief for

---

[1] DYFS is a sub-division of DCF.

violations of her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("Section 1983") against DYFS and DYFS directors; (2) in Count Two, injunctive relief for violations of her Sixth and Fourteenth Amendment rights under Section 1983 and 42 U.S.C. § 1986 ("Section 1986") against DYFS Defendants; (3) in Count Three, money damages for conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985 ("Section 1985"); (4) in Count Four, money damages for violation of Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights to due process and equal protection under Section 1983 against DYFS Defendants; (5) in Count Five, money damages for violation of Plaintiff's First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights under Section 1983 against DYFS Defendants; (6) in Count Six, money damages for unlawful retaliation under Section 1983 against DYFS Defendants; and (7) in Count Seven, money damages for violations of the New Jersey Civil Rights Act ("NJCRA") against DYFS Defendants.

For reasons set forth below, the Court grants DYFS Defendants' motion to dismiss (1) all claims against DYFS, (2) Counts Three through Seven against DYFS directors, (3) Plaintiff's Section 1983 claims alleging violations of the First, Fourth, Fifth, Sixth, and Eighth Amendments and the Fourteenth Amendment's equal protection clause; and (4) Plaintiff's Section 1985 and Section 1986 claims. The Court further denies DYFS Defendants' motion to dismiss (1) DYFS directors in Counts One and Two, (2) DYFS employees in Count Seven (3) Plaintiff's Section 1983 claims in Counts Four and Five for violations of the Fourteenth Amendment's due process clause for injunctive relief against DYFS employees on the basis of quasi-judicial immunity, in part and (4) on the basis of qualified immunity, without prejudice.

## BACKGROUND

For the purpose of this motion, the Court will take the allegations in the Amended Complaint as true, and only recount relevant facts. On July 22, 2011, Michelle Mammaro was

taken to a hospital for wounds she incurred from domestic violence caused by her husband, Damon. At the hospital, Mammaro met with a DYFS caseworker and discussed what had happened. *See* Compl. ¶¶ 23-31. Mammaro's child, D.M., was sent to the home of Mammaro's brother-in-law for the night, so that Mammaro could recover and D.M. could be properly cared for. *Id.* ¶ 32. A DYFS caseworker then visited Mammaro's home on July 26, 2011, and appeared at the first hearing at which Mammaro sought a restraining order against her husband. *Id.* ¶¶ 37-44. The caseworker "began to question" Mammaro, told Mammaro that "someone had made allegations against her," and told Mammaro that she had to go with the caseworker to take a drug test or risk losing custody of her child. *Id.* ¶¶ 37-41. A DYFS caseworker again appeared at Mammaro's final hearing on the restraining order and repeated the request for Mammaro to accompany the caseworker and submit to a drug test screening or risk losing custody of her child. *Id.* ¶ 45.

Mammaro submitted to drug tests on July 28, 2011 and August 4, 2011. *Id.* ¶ 47. She tested positive on both tests and admits to using a small amount of marijuana "in an attempt to self-medicate the stress and anxiety of the domestic violence which had occurred," while D.M "was safe in the care of her uncle and aunt."[2] *Id.* ¶ 46. Mammaro was also ordered to submit to a hair follicle test administered by Omega Laboratories ("Omega"). The test came back as containing 100 picograms/milligram of cocaine, which Omega deemed a positive test despite Omega's stated policy of treating tests reporting exactly 100 picograms/milligram as negative.[3] *Id.* ¶¶ 75-80.

---

[2] According to Mammaro, the second test revealed sharply lower amounts of marijuana in Mammaro's system, and a DYFS caseworker who testified at Mammaro's termination of parental rights trial admitted that the second test showed lower amounts of marijuana. *Id.* ¶ 49.

[3] Further, at the abuse and neglect trial, "DYFS's expert testimony stated that the margin for error for the testing equipment was 20%, and the pictogram/milligram measurement could be negative at 20% below the cut-off." *Id.* ¶ 82.

Thereafter, DYFS filed a Verified Complaint for temporary guardianship of D.M., in which DYFS alleged that Mammaro had engaged in child abuse. *Id.* ¶ 51. According to Mammaro, the Verified Complaint was filled with false and absurd allegations made by Mammaro's husband and brother-in-law.[4] *Id.* ¶¶ 52-56. Further, Mammaro claims that DYFS does not have a policy of pursuing every positive drug test as a case of abuse and neglect, and in fact did not immediately pursue Mammaro's case after the two positive tests.[5] *Id.* ¶ 49.

According to Mammaro, "instead of acknowledging their wrongdoing and assisting [her] with finding a new home, DYFS . . . contacted the Watchung Police Department and, with the illegal threat of force from Officers of the Watchung Police Department . . . [who] arrived at the home in conspiracy with . . . DYFS . . . , forcibly removed D.M. from Mammaro's custody on October 28, 2011, without due process of law and without probable cause." *Id.* ¶ 73. According to Mammaro, she was separated from her child for several days, and her child was only returned to her after she challenged Defendants' actions in New Jersey Superior Court. *Id.* ¶ 74.

Mammaro further alleges that DYFS caseworkers failed to assist Mammaro in attempting to remain a fit parent by (1) refusing to reschedule a random drug test that conflicted with an earlier meeting with Social Services, which resulted in her losing benefits and (2) failing to make arrangements to move Mammaro and her child into an approved home when Mammaro could not obtain an extension of time to continue living in the safe house to which she had relocated

---

[4] For example, Mammaro's brother-in-law Chris made statements about her being under the influence of drugs in front of her child at her home—when in fact, according to Mammaro, Chris has never even been to Mammaro's home. *Id.* ¶ 53. Another example is Damon's allegation that Mammaro bruised herself by "running into walls," which, according to Mammaro, "was completely absurd." *Id.* ¶ 54. A third example is the accusation that Mammaro engaged in "doctor shopping," "even though she only had one doctor for several years." *Id.* ¶ 56.

[5] Ms. Mammaro further claims to have tested negative for illicit substances on every test which was required of her thereafter, including negative screens at Somerset Treatment Services on August 22, September 13, September 20 and September 27, 2011.

following DYFS involvement. *Id.* ¶¶ 61-63, 70-74. Moreover, Mammaro alleges that DYFS caseworkers advised her to agree to lift the restraining order against Damon Mammaro so he could visit D.M., advised Mammaro against checking her joint cell-phone account to track whether her husband was violating the restraining order, and falsely accused Mammaro of abusing prescription medication after Mammaro complained in court about defendants' wrongful conduct. *Id.* ¶¶ 58-59.

DYFS's complaints of child abuse and neglect against Mammaro were dismissed on June 27, 2012, by the Superior Court of New Jersey. According to Mammaro, the court found that "she had never abused or neglected her child." Compl. ¶ 90.

On October 28, 2013, Plaintiff filed a lawsuit in this Court against, *inter alia*, DYFS Defendants. In her Amended Complaint, Plaintiff claims in relevant part that (1) under Section 1983, DYFS Defendants violated Plaintiff's First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; (2) under Section 1983 and Section 1986, DYFS Defendants violated Plaintiff's Sixth and Fourteenth Amendment rights; (3) under Section 1985, DYFS Defendants engaged in a conspiracy to violate Plaintiff's civil rights; (3) under Section 1983, DYFS Defendants retaliated against Plaintiff for seeking an investigation of Defendants' actions; and (4) under the New Jersey Civil Rights Act ("NJCRA"), DYFS Defendants have violated Plaintiff's civil rights as guaranteed by the U.S. Constitution and the laws of the State of New Jersey.[6]

On March 25, 2014, defendants Omega and Patrick Minno ("Minno") moved to dismiss Plaintiff's claims against them; the Court granted Omega and Minno's motion on September 30, 2014. On June 3, 2014, DYFS Defendants filed the present motion to dismiss, asserting (1)

---

[6] Plaintiff asserts seven causes of action in her Amended Complaint. Counts One and Two, under Section 1983 and Section 1986, and for prospective injunctive relief, are, in relevant part, only asserted against DYFS, Wood, and Blake. Counts Three through Seven, under Section 1983 and Section 1985, are asserted against all DYFS Defendants.

sovereign immunity, (2) quasi-judicial immunity, (3) qualified immunity and (4) that Plaintiff fails

to state a claim under Section 1983, Section 1985, and the NJCRA.

## DISCUSSION

I.    *State Sovereign Immunity*

DYFS Defendants claim that under the Eleventh Amendment, they are immune from suit

under Section 1983, Section 1985, and Section 1986. A motion to dismiss based on state sovereign

immunity is appropriate under both Rule 12(b)(1) and Rule 12(b)(6). *See Carter v. City of*

*Philadelphia,* 181 F.3d 339, 343 (3d Cir. 1999) (considering immunity under 12(b)(6)); *Blanciak*

*v. Allegheny Ludlum Corp.,* 77 F.3d 690, 693 n. 2 (3d Cir.1996) (considering immunity under

12(b)(1)). Defendants bring their motion under Rule 12(b)(1). Under either standard, the Court

must look to the face of the Complaint and take its allegations as true. In an ordinary Rule 12(b)(1)

motion, the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists.

*See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991), *cert. denied,* 501

U.S. 1222 (1991). Sovereign immunity, on the other hand, is an affirmative defense, and the burden

of demonstrating immunity lies with the party asserting it. *See Carter v. City of Philadelphia,* 181

F.3d 339, 347 (3d Cir. 1999) (citing *Christy v. Pennsylvania Turnpike Commission,* 54 F.3d 1140,

1144 (3d Cir. 1995)).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by citizens of another state, or by citizens or subjects of any foreign state." The

amendment precludes federal jurisdiction over a state absent the state's consent to suit. *See*

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The immunity from suit

extends to agencies, departments and officials of the state when the state is the real, substantial

6

party in interest. Id. at 101–102; *Alabama v. Pugh*, 438 U.S. 781 (1978). In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, the Third Circuit explained that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d 655, 659 (3d Cir.1989). In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001).[7]

Here, Plaintiff argues that DYFS should not be considered an "arm" of the state because the agency has funding separate and independent of the New Jersey state treasury, since DYFS receives federal funding and "often obtains monies from the parents it brings actions against as 'child support,' but here is no accounting of these funds." Pl.'s Opp. Br. at 10.

However, courts in this state have long held that DYFS is, "beyond dispute," an arm of the state for sovereign immunity purposes. *New Jersey Div. of Youth & Family Servs. v. D.C.*, 118 N.J. 388, 396 (1990) ("DYFS is . . . a supervisory arm of the State.") (internal citation and quotation marks omitted); *see also Izquierdo v. New Jersey*, No. 12-7298 DRD, 2014 WL 234186, at *2 (D.N.J. Jan. 21, 2014), *appeal dismissed* (May 1, 2014); *Sweet-Springs v. Dep't of Children & Families*, No. 12-706 FLW, 2013 WL 3043644, at *5 (D.N.J. June 17, 2013); *Simmerman v. Corino*, 804 F.Supp. 644, 650 (D.N.J. 1992) ("The Division of Youth and Family Services is . . . created by statute and is answerable to other State agencies.").

---

[7] The Third Circuit has explained that "there are only three narrowly circumscribed exceptions to Eleventh Amendment immunity (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law.*" M.A. ex rel. E.S. v. State–Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003) (citing *MCI Telecomms. Corp. v. Bell Atlantic–Pennsylvania Serv.*, 271 F.3d 491, 503 (3d Cir.2001), cert. denied, 537 U.S. 941 (2002). Plaintiff has not argued that any of these "narrowly circumscribed" exceptions apply.

Plaintiff's attempts to distinguish this established body of case law by citing to two cases in support of her position: (1) *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1307 (3d Cir. 1979), in which the Third Circuit found that a lawsuit against the New Jersey Cemetery Board could proceed because New Jersey was not a real party-in-interest, and (2) *Fitchik*, 873 F.2d at 662, in which the Third Circuit found that New Jersey Transit Rail Operations ("NJTRO"), a wholly-owned subsidiary of New Jersey Transit ("NJT"), was not entitled to sovereign immunity. However, both cases are distinguishable. In *Ramada Inns*, the Third Circuit found that "[n] o possible outcome of this suit could result in an award of damages which will be paid out of the state treasury or in equitable relief which must be satisfied by the state" because the plaintiff in that case simply sought money it had paid out to be returned and that neither the attorney general nor the cemetery board had raised an Eleventh Amendment defense. In *Fitchik*, the Third Circuit found that the vast majority of NJT funds came from passenger fares and federal funding, NJT was self-insured, and "New Jersey is under no obligation to pay NJT's debts or reimburse NJT for judgments that it pays;" accordingly, judgment against NJT in the personal injury case at issue would not come out of the state treasury *Fitchik*, 873 F.2d at 662. *Ramada Inns*, 598 F.2d at 1307.

Here, however, there are no facts demonstrating that New Jersey is a minority contributor to DYFS's budget or that Plaintiff's asserted relief—totaling $60 million in compensatory and punitive damages, plus attorneys' fees and injunctive relief—will not impact the state treasury. Further, DYFS has clearly asserted Eleventh Amendment immunity. Am. Compl. at ¶ 165; Defs.' Br. at 9. Moreover, the other two *Fitchik* factors, the status of the entity under state law and the degree of autonomy enjoyed by the entity, clearly weigh towards finding that DYFS is an arm of the state. *See Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992) *aff'd*, 16 F.3d 405 (3d

Cir. 1993). Plaintiff's argument is unavailing. DYFS is an arm of the State and thus, New Jersey is the real party-in-interest in this litigation against DYFS.[8] Therefore, DYFS is entitled to sovereign immunity and all claims against the agency must be dismissed.

I now turn to whether the individual DYFS defendants also enjoy sovereign immunity. Usually, absent specific abrogation of the state's immunity by Congress or consent by a state, suits for money damages against a state or state officials in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (concluding that Eleventh Amendment barred official capacity action for damages in Section 1983 suit); *Edelman v. Jordan*, 415 U.S. 651 (1974) (holding that suit against state official for retroactive monetary relief, which requires payment of funds from state treasury is barred by Eleventh Amendment); *accord Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996). The Eleventh Amendment, however, does not bar Plaintiffs from suing state officials for violations of federal law where future injunctive relief is sought. *See Ex parte Young*, 209 U.S. 123 (1908) (holding that Eleventh Amendment does not prohibit suit to enjoin state Attorney General from enforcing state statute that allegedly violated Fourteenth Amendment); *see also Edelman*, 415 U.S. 651 (same); *Koslow*, 302 F.3d at 167–68 (same).

Here, Plaintiff has named Wood, the director of DYFS, and Blake, the commissioner of the Department of Children and Families ("DCF") solely in their official capacities and in all seven

---

[8] I specifically note that though Plaintiff argues that DYFS's receipt of federal funding precludes DYFS from being considered an arm of the state, Plaintiff does not argue or otherwise provide support for the position that New Jersey waived its Eleventh Amendment immunity in this case by accepting federal funding. *See M.A. ex rel. E.S.*, 344 F.3d at 345. Even if the Court were to read such an argument into Plaintiff's brief, the argument would fail. While other courts in this district have accepted that DYFS receives federal funding and therefore can potentially be sued under the Rehabilitation Act, *see Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 490 (D.N.J. 2001), the Rehabilitation Act is a statute that clearly conditions receipt of federal funding on waiving Eleventh Amendment immunity. *See Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 170 (3d Cir. 2002). The Court is unable to find any cases holding that DYFS has waived its Eleventh Amendment immunity against Section 1983 or Section 1985 suits.

of her causes of action. In Counts One and Two, Plaintiff solely seeks injunctive relief "in the form of an order requiring that the explicit instruction and policy be made requiring DYFS workers to refrain from abuse of process." Am. Compl. at ¶¶ 112, 118. In her remaining causes of action (Counts Three through Seven), Plaintiff only seeks monetary damages, including attorneys' fees, costs, and interest. *Id.* ¶ 122. Because DYFS directors are being sued in their official capacities for money damages in Counts Three through Seven of Plaintiff's Amended Complaint and New Jersey is the real party-in-interest upon which liability is to be imposed,[9] it is clear that under Eleventh Amendment immunity analysis, Counts Three through Seven against DYFS directors must be dismissed. *See Jones v. Hashagen*, 512 F. App'x 179, 182 (3d Cir. 2013); *see also Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 398 (D.N.J. 2008).

However, DYFS directors are not entitled to sovereign immunity as to Counts One and Two, since those claims are purely for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123; s*ee also Edelman*, 415 U.S. 651; *Koslow*, 302 F.3d at 167–68. Finally, Plaintiff's claims against DYFS employees in their individual capacities based on actions taken under color of state law are also not precluded by sovereign immunity and may not be dismissed on that basis.[10] *Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("The Eleventh Amendment does not bar . . . suits [against state officials sued in their individual capacities], nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.").

---

[9] As I found above, DYFS is an arm of the state, and the parties do not dispute that DCF, which oversees DYFS, is also an arm of the state. Therefore, the state of New Jersey is the real party-in-interest. *See Jones v. Hashagen*, 512 F. App'x 179, 182 (3d Cir. 2013).

[10] DYFS Defendants claim that despite the fact that Plaintiff has named DYFS employees in their individual capacities, "the State defendants are being sued for the actions as State officers/employees and, therefore, they are entitled to cloak themselves in [sic] State's sovereign immunity." Defs.' Br. at 9. DYFS Defendants cite to *Johnson v. State of New Jersey*, 869 F.Supp. 289 (D.N.J. 1994) for this proposition. However, *Johnson* did not examine the issue of sovereign immunity for officials sued in their individual capacities, and the case law is clear on denying sovereign immunity for officials sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

In sum, under Eleventh Amendment sovereign immunity analysis, Plaintiff's federal claims against DYFS and federal claims for monetary damages against DYFS directors must be dismissed. However, Plaintiff's claims against DYFS directors for prospective injunctive relief and against DYFS employees in their individual capacities may not be dismissed on the basis of sovereign immunity.

II.    *Failure to State A Claim*

        a.   *Section 1983*

DYFS Defendants also argue that Plaintiff fails to state a claim under Section 1983. 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "A Section 1983 claim has two essential elements: (1) the conduct complained of must be 'committed by a person acting under color of state law'; and (2) this conduct must 'deprive[ ] a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Burton v. Kindle*, 401 F. App'x 635, 636-37 (3d Cir. 2010) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993)).

In order to be liable within the meaning of the statute, a defendant must be a "person." In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that a State, or an official acting in his or her official capacity for the State, being sued for money damages is not a person within the meaning of 42 U.S.C. § 1983. Specifically, the Court noted that Congress did not intend to override the immunity protections afforded to a state and its officials under the Eleventh Amendment. *Id.* Thus, a cause of action for money damages brought pursuant

to § 1983, cannot be asserted against the State, its agencies, or its officials acting in their official capacities. As the Court has already determined that DYFS and DYFS directors are entitled to sovereign immunity because DYFS is an "arm" of the state" and DYFS directors are state officials of "arms" of the state being sued in their official capacities, Plaintiff's Section 1983 claims for money damages against DYFS and DYFS directors may alternatively be dismissed because they are not "persons" within the meaning of Section 1983.

Further, Plaintiff must establish which rights or privileges have been infringed upon by DFYS Defendants' actions. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *see also Burse v. Borough of Swissvale*, No. CIV.A. 13-705, 2014 WL 1017886, at *4 (W.D. Pa. Mar. 17, 2014); *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 171 (3d Cir. 2001). Plaintiff asserts violations of her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. However, Plaintiff's causes of action are conclusory and do not explain how each amendment is implicated by DYFS Defendants' conduct. *See* Am. Compl. ¶¶ 105-160. Parsing the general allegations contained in Plaintiff's complaint, which precede each of Plaintiff's causes of action, only reveals allegations that DYFS Defendants deprived Plaintiff of her Fourteenth Amendment rights to procedural and, possibly, substantive due process in what Plaintiff describes as a seemingly-arbitrary and adversarial investigation into Plaintiff's parenting and the forcible removal of D.M. without a hearing.[11] As the following analysis demonstrates, not only does Plaintiff not clearly explain how certain of her rights have been violated, but certain of the constitutional claims she assets have absolutely no applicability here.

---

[11] However, the Court reserves judgment whether Plaintiff's Section 1983 allegations under the Fourteenth Amendment's due process clause do indeed state a claim under Section 1983. The Court merely finds that on its face, the allegations in Plaintiff's complaint may support such a claim against DYFS defendants who are persons within the meaning of Section 1983. Thus, the Court declines to dismiss Plaintiff's due process claims without DYFS Defendants specifically moving and briefing that Plaintiff has failed to establish the other elements of Section 1983 liability under the Fourteenth Amendment's due process clause.

First, Plaintiff asserts a First Amendment violation in both Count Five and Count Six. In Count Five, Plaintiff asserts that an abuse of process claim and states that "Defendants . . . caused Plaintiff to be deprived of her rights to speak truthfully about the Defendants' conduct without fear of reprisal and retaliation in violation of the First Amendment . . . ." Am. Compl. ¶ 138. In Count Six, Plaintiff lists a separate, explicit retaliation claim under Section 1983 and contends that Defendants undertook unspecified conduct in retaliation for Plaintiff's "exercise of her First Amendment rights in communicating seeking [*sic*] investigation of Defendants' actions." *See* Am. Compl. ¶ 143. The Court construes both claims as First Amendment retaliation claims.

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003). "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal citation and quotation marks omitted). Here, while Plaintiff asserts that the hair follicle test administered by Omeag "was falsified evidence . . . submitted in retaliation for her complaints about [DYFS's] violations of [her] rights," Am. Compl. at ¶ 86, Plaintiff does not specifically describe any protected activity in which she engaged or explain how the erroneous hair follicle test would deter a person of ordinary firmness from exercising her First Amendment rights.[12] Therefore, Plaintiff's Section 1983 claim under the First Amendment claim must be dismissed.

---

[12] Further, Plaintiff alleges that Omega, not DYFS, found Plaintiff's hair follicle to test positive for cocaine and marijuana. However, the Court dismissed Plaintiff's claims against Omega and Minno, Omega's agent, because the

Second, Plaintiff repeatedly claims that DYFS Defendants caused Plaintiff to be deprived of her Fourth Amendment right, and quotes the Fourth Amendment as stating that no person shall "be deprived of life, liberty, or property, without due process of law." Am. Compl. ¶¶ 111, 136. However, such language is not contained in the Fourth Amendment. The Fourth Amendment states,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. Plaintiff in no way explains how her right to be free from unreasonable searches and seizures is implicated in her lawsuit; accordingly, her Section 1983 claim under the Fourth Amendment claim must be dismissed.

Third, Plaintiff asserts that her Sixth Amendment rights have been violated. The Sixth Amendment states,

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. CONST. AMEND. VI. None of Plaintiff's allegations state that she was the subject of a criminal prosecution. *See* Am. Compl. Thus, Plaintiff's Sixth Amendment claim must be dismissed.

Fourth, Plaintiff asserts that her Eighth Amendment right to be free from cruel and unusual punishment has been violated. The Eighth Amendment states that "excessive bail shall not be

---

Court found that Plaintiff did not allege facts sufficient to find that Omega was a state actor for the purposes of Section 1983 liability. *Mammaro v. Omega Lab., Inc.*, No. CIV.A. 13-6483 FLW, 2014 WL 4854602, at *3–*5 (D.N.J. Sept. 30, 2014). Therefore, Plaintiff's allegations that DYFS Defendants, acting through Omega, falsified the test results fails.

required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII. However, Plaintiff does not specify which, if any, actions of which she complains constitutes cruel and unusual punishment. *See* Am. Compl. Therefore, Plaintiff's Section 1983 claim under the Eighth Amendment claim must be dismissed.

Fifth, Plaintiff also asserts that her Fourteenth Amendment right to equal protection was violated. The Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST. AMEND. XIV. "In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Id.* (citing *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). A plaintiff may proceed as a "class of one" by alleging that she has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 860 (3d Cir.2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also McGuire v. Nw. Area Sch. Dist.*, No. 3:11-CV-1022, 2012 WL 1144652, at *3 (M.D. Pa. Apr. 5, 2012). Plaintiff has asserted an equal protection violation in Counts Four and Five of her Amended Complaint. Plaintiff has alleged no facts in those causes of action specifically demonstrating that she was the target of purposeful discrimination or that she was intentionally treated differently from others similarly situated. *See* Am. Compl. ¶¶ 123-39. Therefore, Plaintiff's Section 1983 claim under the Fourteenth Amendment's equal protection clause must be dismissed.

Accordingly, the Court dismisses Plaintiff's Section 1983 claims to the extent they assert violations of Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment equal protection rights. However, Plaintiff's Section 1983 claims asserting violations of her Fourteenth Amendment

due process rights, against DYFS directors in Counts One and Two and against DYFS employees in Counts Four and Five, may proceed.

> b. *NJCRA*

DYFS Defendants further argue they are not "persons" within the meaning of the NJCRA. The NJCRA was modeled after § 1983, and thus courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug.25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart. . . ."); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."). Courts in this District have generally interpreted the NJCRA as having incorporated the Supreme Court's holding in *Will*. *See, e.g.*, *Lopez-Siguenza v. Roddy*, No. CIV. 13-2005 JBS/JS, 2014 WL 1298300, at *7 (D.N.J. Mar. 31, 2014); *Didiano v. Balicki*, Civ. 10–4483 (RBK/AMD), 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011), *aff'd*, 488 F. App'x 634 (3d Cir. 2012); *Chapman*, 2009 WL 2634888, at *3; *Slinger v. New Jersey*, Civ. 07–5561(DMC), 2008 WL 4126181, at *7 (D.N.J. Sept. 4, 2008), *rev'd in part*, 366 F. App'x 357 (3d Cir. 2010). Accordingly, Plaintiff's NJCRA claims against DYFS and DYFS directors also fail as a matter of law because they are not persons amenable to suit under the NJCRA. However, Plaintiff's NJCRA claims against DYFS employees in their individual capacities are not subject to dismissal on this basis, because, as discussed *supra* in my sovereign immunity analysis, they are persons amenable to suit.

> c. *Section 1985*

DYFS Defendants argue that Plaintiff has failed to state a claim under Section 1985. In Count Three, Plaintiff alleges that defendants, including DYFS Defendants, conspired, in violation

of § 1985, when they "reached a meeting of the minds amongst themselves that incidents of abuse of process would be tolerated notwithstanding the constitutional implications of such abuse and the likelihood such conduct would be repeated." Compl. ¶ 120–22. Plaintiff further avers that this abuse of process is evident through "Defendants' incidents of abuse of process and from the repeating of that conduct in an effort to delay Michelle Mammaro her rights of due process." Compl. ¶ 121. Taken together, Plaintiff accuses DYFS Defendants of conspiring with other defendants to abuse process in violation of § 1985. *See* Compl. ¶¶ 119–122.

I incorporate my September 30, 2014 opinion's Section 1985 analysis—in which I dismissed Plaintiff's Section 1985 and Section 1986 claims against Omega and Minno—herein, and reiterate and adopt my previous conclusions.. No abuse of process claim exists under § 1985. *See* 42 USC § 1985; *see Mammaro v. Omega Lab., Inc.*, No. CIV.A. 13-6483 FLW, 2014 WL 4854602, at *5-*6 (D.N.J. Sept. 30, 2014); *see also Marable v. W. Pottsgrove Twp.,* 176 Fed. App'x 275, 281–282 (3d Cir.2006); *Natale v. Schwartz,* 1999 U.S. Dist. LEXIS 18933, at *30, 1999 WL 1134535 (E.D. Pa. Dec. 10, 1999). And, while a state action for abuse of process may give rise to a conspiracy to obstruct justice in violation of 42 USC § 1985(2),[13] Plaintiff has not

---

[13] 42 U.S.C. § 1985(2), titled "Obstructing Justice; intimidating party, witness, or juror," states:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

pled this type of claim.[14] Am. Compl. ¶¶ 119–122. Simply, Plaintiff has failed to state a claim; thus, Plaintiff's claim for abuse of process in violation of § 1985 is dismissed.

Further, because Plaintiff cannot state a claim under § 1985, she also cannot state a claim under § 1986.[15] *See Brawer v. Horowitz,* 535 F.2d 830, 841 (3d Cir. 1976); *Clark v. Clabaugh,* 20 F.3d 1290, 1295 n.5 (3d Cir. 1994). Accordingly, Plaintiff's §§ 1985 and 1986 claims are dismissed for failure to state a claim.

III.     *Quasi-Judicial Immunity*

Next, I analyze DYFS Defendants' argument that child welfare workers are protected by absolute, quasi-judicial immunity.[16] "Quasi-judicial absolute immunity attaches when a public official's role is functionally comparable to that of a judge. To determine this, a court must consider whether the official acted independently and what procedural safeguards attended his/her decision-making process." *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (internal citation and quotation marks omitted); *see also Butz v. Economou*, 438 U.S. 478, 513 (1978); *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).

In *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486 (3d Cir. 1997), the Third Circuit found that the child welfare workers from Child and Youth Services of Chester County,

---

[14] Nevertheless, even under § 1985(2), Plaintiff would still fail to state a claim because the Third Circuit requires § 1985(2) claims for conspiracy to "include allegations that the conspiracy was motivated by racial or class-based discriminatory animus," and Plaintiff at no point in her Complaint indicates any protected class to which she belongs. Nor does she allege that she was denied equal protection because of her class membership. *See Davis v. Township of Hillside,* 190 F.3d 167, 171 (3d Cir. 1999) ("Because plaintiff does not allege that the officers colluded with the requisite " 'racial, or ... otherwise class-based, invidiously discriminatory animus,' ... the district court correctly dismissed this claim.") (citation omitted); *see also Kush v. Rutledge,* 460 U.S. 719, 725 (1983).

[15] The Court notes that DYFS Defendants have not specifically moved to dismiss Plaintiff's Section 1986 claim under Rule 12(b)(6). *See* Defs.' Br.

[16] The Court notes that it does not appear that quasi-judicial immunity extends to claim for injunctive relief; accordingly, the Court solely analyzes whether DYFS employees may enjoy quasi-judicial immunity. DYFS directors do not appear to be able to claim quasi-judicial immunity. *Bernstein v. New York,* 591 F. Supp. 2d 448, 463 (S.D.N.Y. 2008) (citing *Pulliam v. Allen,* 466 U.S. 522, 541–42 (1984)).

Pennsylvania "were entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings,"[17] including "their formulation and presentation of recommendations to the court in the course of such proceedings." *Id.* at 488. The Third Circuit cited the following considerations in reaching its conclusion: "(1) the functions performed by the CYS defendants in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers." *See also Nicini v. Morra*, 212 F.3d 798, 813 n.11 (3d Cir. 2000). However, this immunity does not extend to administrative or investigative acts outside the scope of the actual dependency proceeding. *See Ernst*, 108 F.3d at 497 n.7; *see also B.S. v. Somerset Cnty.*, 704 F.3d 250, 266 (3d Cir. 2013). In *B.S. v. Somerset Cnty*, the Third Circuit extended this immunity to the actions taken by a child protective services worker in seeking a court order transferring custody from a child's mother to her father. *Id.* at 264-65.

Here, whether quasi-judicial immunity applies turns on whether DYFS employees "'function[ed] as the state's advocate when performing the action(s)' that gave rise to the due process violations [Plaintiff] seeks to redress, or whether those claims instead arose from unprotected 'administrative or investigatory actions.'" *B.S.*, 704 F.3d at 265 (quoting *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008)). "The key to the absolute immunity determination is not the timing of the investigation relative to a judicial proceeding, but rather the underlying

---

[17] Dependency proceedings are, essentially, child protection proceedings. *See* Randi Mandelbaum, *Revisiting the Question of Whether Young Children in Child Protection Proceedings Should Be Represented by Lawyers*, 32 Loy. U. Chi. L.J. 1, 22 (2000).

function that the investigation serves and the role the caseworker occupies in carrying it out." *B.S.*, 704 F.3d at 270. In *B.S.*, the Third Circuit carefully examined the line between prosecutorial and investigatory actions undertaken by a child protective services worker who, after a judge had signed an initial custody removal order, had continued to investigate and filed a ChildLine report in connection with a subsequent custody determination. *Id.* at 265-70. The court concluded that "the presence of an investigative component to [a child protective services worker's] conduct does not bar the application of absolute immunity when the function of her actions is still fundamentally prosecutorial in nature." *Id.* at 269. Thus, the court found that the child protective services worker's complained-of actions were within the ambit of the ongoing judicial proceeding, and granted absolute immunity.[18] *Id.*

Here, unlike the actions at issue in *B.S.*, the bulk of Plaintiff's allegations in her Amended Complaint concern actions or omissions undertaken by DYFS employees that appear to lack a prosecutorial purpose. Those actions include DYFS employees' allegedly (1) coercive insistence that Plaintiff submit to questioning and take a drug test, (2) recommendation that Plaintiff maintain contact with her estranged husband, (3) failure to assist Plaintiff in securing public benefits and housing, and (2) decision to contact the Watchung police, which resulted in the removal of D.M. from Plaintiff's custody. *See generally* Am. Compl. Further, none of Plaintiff's causes of actions specifically refer to DYFS's Verified Complaint or actions DYFS employees took in direct connection with Plaintiff's abuse and neglect trial. *See, e.g.*, *McCready v. Womble*, No. CIV.A. 11-7670, 2014 WL 1608446, at *18 n.28 (E.D. Pa. Apr. 22, 2014).

---

[18] This Court notes with disapproval that neither DYFS Defendants nor Plaintiff cited to *B.S.*, a recently-decided and precedential Third Circuit decision, in their quasi-judicial immunity arguments—or indeed, anywhere in their briefs. *See* Defs.' Br.; Pl.'s Opp. Br.

However, several paragraphs concern the allegations contained in the Verified Complaint DYFS filed afterwards "seeking temporary guardianship of D.M. and [stating] allegations of child abuse against Plaintiff." *Id.* ¶ 51; *see also id.* at ¶¶ 51-56. The Verified Complaint resembles the ChildLine report in *B.S.* and falls within the scope of the immunity as defined in *Ernst* protecting the "formulation and presentation of recommendations to the court in the course of [child custody] proceedings." 108 F.3d at 488.

Because DYFS Defendants' complained-of actions are a mix of prosecutorial and investigative/administrative actions, the Court finds that DYFS employees are only entitled to quasi-judicial immunity to the extent that Plaintiff's claims are premised on DYFS directors and DYFS employees' actions taken in preparing the Verified Complaint and actions taken in representing the State in Plaintiff's abuse and neglect trial.

IV.     *Qualified Immunity*

Finally, DYFS Defendants claim they are entitled to qualified immunity. State actors are entitled to qualified immunity as an affirmative defense against Section 1983 claims when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated."[19] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court has established a two part test for determining whether a state actor is entitled to a defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). This test asks "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *James v. City of Wilkes-Barre*, 700 F.3d 675,

---

[19] The Court solely analyzes whether DYFS employees may enjoy qualified immunity, as qualified immunity does not extend to individuals being sued in their official capacities. Thus, DYFS directors may not claim qualified immunity. *See Morse v. Frederick*, 551 U.S. 393, 400 (2007); *Brandt v. Monte*, 626 F.Supp.2d 469, 478 (D.N.J.2009) ("Qualified immunity is available only for individual capacity claims for damages."); *Disability Rights New Jersey, Inc. v. Velez*, Civ. No. 10-3950 DRD, 2011 WL 4436550, at *5 (D.N.J. Sept. 23, 2011).

679 (3d Cir. 2012) (citing *Saucier*, 533 U.S. at 201). In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court held that courts were not required to analyze the first prong of *Saucier* before proceeding to the second prong. *Id* at 240; *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009).

While the Supreme Court has established that "qualified immunity questions should be resolved at the earliest possible stage of litigation," *Anderson v. Creighton*, 483 U.S. at 646 n.6, the Court has noted that such questions can sometimes only appropriately be resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, the Third Circuit has held that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). *See also Coles v. Carlini*, 2012 WL 1079446, at *9 (D.N.J. Mar. 29, 2012). Questions of qualified immunity may only be resolved on a motion to dismiss "when the immunity is established on the face of the complaint," *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006), in other words, where "the plaintiff's allegations [do not] state a claim of violation of clearly established law." *Mitchell*, 472 U.S. at 526. Accordingly, this Court will analyze whether Plaintiff has alleged a violation of clearly established law to determine whether it is appropriate to find that DYFS employees are entitled to qualified immunity at this stage of the litigation.

The threshold test for determining whether DYFS employees meet the first prong of the *Saucier* qualified immunity analysis is to "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In the substantive due process context, to determine whether Plaintiff has sufficiently pled that the constitutional right in question was infringed upon, the Court must determine whether DYFS employees' alleged actions are arbitrary

or "shock the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011). In order to meet this standard, "[t]he defendant's actions must be 'an abuse of executive power so clearly unjustified by any legitimate objective as to be barred by the Fourteenth Amendment.'" *O'Donnell v. Simon*, 2007 WL 2159596, at *12-*13 (D.N.J. July 25, 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). There is no clearly stated method through which courts should determine whether a defendant's conduct has shocked the conscience because "'deliberate indifference that shocks in one environment may not be so patently egregious in another.'" *Levin v. Upper Makefield Twp.*, 90 F. App'x 653, 661 (3d Cir. 2004) (quoting *Lewis*, 523 U.S. at 850). Thus, the relevant inquiry may "begin[] . . . [with] asking whether or not the objective character of certain conduct is consistent with our traditions, precedents, and historical understanding of the Constitution and its meaning."[20] *Id.* (quoting *Lewis*, 523 U.S. at 857 (Kennedy, J., concurring)).

In determining whether a right was clearly established, the dispositive inquiry revolves around whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201.

DYFS Defendants do not dispute that Plaintiff has identified a specific Fourteenth Amendment constitutional right allegedly infringed, i.e. Plaintiff's right to parent her child. *See Davis v. Thornburgh*, 903 F.2d 212, 225 (3d Cir. 1990); *see also Lassiter v. Dept. of Social Serv.*, 452 U.S. 18 (1981). And, indeed, to the extent Plaintiff asserts a substantive due process violation,

---

[20] In the context of child protective workers or other social workers seeking qualified immunity from a substantive due process claim asserted by a claimant, "a social worker need not have acted with the 'purpose to cause harm,' but the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999).

DYFS Defendants also fail to contest whether their complained-of activity "shocks the conscience." *See* Defs.' Br. At 17-18. Therefore, on this record, the Court must conclude that the parties do not dispute that Plaintiff has met the first prong of the *Saucier* analysis.

However, DYFS Defendants do dispute whether Plaintiff has met the second prong of the *Saucier* analysis by claiming a violation of clearly established law. DYFS Defendants argue that their institution of an abuse and neglect complaint against Plaintiff was not clearly unlawful to reasonable DYFS officers, because Plaintiff (1) admittedly tested positive for marijuana, (2) reportedly, Plaintiff had also tested positive for cocaine and marijuana, and (3) Plaintiff's husband, Damon, also made allegations against her.

Here, accepting Plaintiff's allegations as true and drawing all inferences in her favor, the Verified Complaint and other actions taken against Plaintiff were "malicious" and DYFS Defendants' proffered reasons for pursuing her case are pretextual. *See* Am. Compl. at 89. Plaintiff points to the following facts to support her position: (1) DYFS employees ignored their general policy of not pursuing "every positive drug test as a case of abuse or neglect" and (2) Damon Mammaro's allegations were made "in an interview while he was on tranquilizers in a county jail cell" awaiting hearings on charges related to his domestic abuse of Plaintiff and while testifying at the Final Restraining Order Hearing. Further, DYFS employees continued to accept hearsay allegations against Plaintiff "despite admissions by those [who] made them that they were using their allegations to gain leverage against Plaintiff in her family law matters." *See* Am. Compl. ¶¶ 19-104. In spite of the alleged holes in DYFS employees' case against Plaintiff and Plaintiff's good-faith attempt to comply with DYFS employees' requirements during their investigation of her, Plaintiff contends DYFS employees participated in the forcible removal of D.M. from Plaintiff's custody without a hearing. Plaintiff's allegations paint the picture that DYFS employees

acted arbitrarily and malevolently to obstruct Plaintiff's parental rights. At this preliminary stage of the litigation, the Court finds that Plaintiff's allegations may support her claim that DYFS employees violated her clearly-established constitutional rights by engaging in conduct that is sufficiently conscience-shocking or unlawful to a reasonable officer at the time. *See Weaver v. Marling*, No. 2:12-CV-1777, 2013 WL 4040472, at *7 (W.D. Pa. Aug. 8, 2013).

Accordingly, the Court denies without prejudice DYFS Defendants' request for qualified immunity on Plaintiff's remaining Section 1983 substantive due process claims against DYFS employees. DYFS Defendants are free to renew their motion for qualified immunity on summary judgment.

## CONCLUSION

The Court grants DYFS Defendants' motion to dismiss (1) all claims against DYFS, (2) Counts Three through Seven against DYFS directors, (3) Plaintiff's Section 1983 claims alleging violations of the First, Fourth, Fifth, Sixth, and Eighth Amendments and the Fourteenth Amendment's equal protection clause; and (4) Plaintiff's Section 1985 and Section 1986 claims. The Court further denies DYFS Defendants' motion to dismiss (1) DYFS directors in Counts One and Two, (2) DYFS employees in Count Seven; (3) Plaintiff's Section 1983 claims in Counts Four and Five for violations of the Fourteenth Amendment's due process clause against DYFS employees on the basis of quasi-judicial immunity, in part and (4) on the basis of qualified immunity, without prejudice. Counts One, Two, Four, Five, and Seven may proceed as limited by the Court.

Dated:          January 15, 2015

/s/ Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.

25